**UNITED STATES of America, Appellant,**

v.

**Robert Norman LATTIMORE, Appellee.**

**No. 91–3454.**

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1992.

Decided Sept. 3, 1992.

Rehearing Denied Oct. 19, 1992.

Margaret T. Burns, Asst. U.S. Atty., Minneapolis, Minn., argued, for appellant.

Arthur R. Martinez, Minneapolis, Minn., argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

The United States appeals from a sentence of 72 months levied upon Robert Lattimore by the District Court after his plea of guilty to one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Lattimore's range under the United States Sentencing Guidelines was 78 to 97 months, but the District Court departed downward, citing the Sentencing Commission's failure to take properly into consideration the mandatory minimum sentences contained in 21 U.S.C. § 841(b), 787 F.Supp. 170 (D.Minn.1991). We reverse.

### I.

The facts of this case are not in dispute. Lattimore, pursuant to a negotiated plea with the government, pleaded guilty to one count of possession with intent to distribute 23 grams of crack cocaine. Following a presentence investigation, the District Court determined that Lattimore had a total offense level of 28 and a criminal-history category of I, which produced a sentencing range of 78 to 97 months. In addition, under 21 U.S.C. § 841(b)(1)(B)(iii), the defendant was subject to a mandatory minimum sentence of five years.

Before sentencing the defendant, the District Court notified the parties that it was contemplating a departure from the sentencing range because of what it considered the Sentencing Commission's inadequate consideration of mandatory minimum sentencing. After hearing arguments from the government, the Court departed downward, stating:

Under 18 United States Code Section 3553(b), a court may depart from a presumptive sentence when they find ... "an aggravating or mitigating circumstance of a kind or degree not adequately taken into consideration by the Sentenc-

ing Commission...." The guidelines should be applied in any crime or could be applied for any crime. But here it is applied particularly to a crime which invokes a statutory minimum. And it appears in my review of the sentencing guideline materials that the Guideline Commission has inadequately considered the impact of the mandatory minimum in guideline calculations.

In Section 5G1.1, the guidelines direct that where a mandatory minimum sentence is lower than the guideline range, the statutory maximum would be the guideline sentence. Similarly, a statutory minimum, which is greater than a guideline range, the statutory minimum would be the guideline sentence. In other words, the statutory minima and maxima serve to expand the guideline range in those specific circumstances. In any other case, according to 5G1.1, the sentence may be imposed "at any point within the applicable guideline range as long as the sentence is not greater than the statutory maximum or less than the minimum." The guidelines do not specifically distinguish this situation, where the statutory minimum is less than the Guideline range: here, 78 to 97 months. The statutory minimum is 60 months. 18 U.S.C. § 841(b)(1)(B).

In this Court's view, the statutory minimum is Congress's own clear expression ... of the mandatory minimum for a particular offense, and the Court however, finds no recitation in the Guidelines reflecting the Commission's consideration of that fact. Accordingly, I will depart from the presumptive sentence by *incorporating the statutory minimum.* Thus, the Court would find the applicable Sentencing Guideline range, then, to be from 60 months to 97 months.

Sentencing Transcript 9–11. In addition to these statements, the Court noted the potential disparate impact upon minorities of the Sentencing Guidelines' treatment of crack offenses.

■ Following these statements, the Court imposed a sentence of 72 months— the minimum 60 months for the drug offense and 12 additional months for posses-

sion of a .32 caliber revolver at the time of the offense. Lattimore also received a four-year term of supervised release and a $50.00 special assessment. The government now appeals, arguing that the departure was unwarranted. This is a question of law which we review de novo. *United States v. Werlinger,* 894 F.2d 1015, 1016 (8th Cir.1990).

## II.

■ With the passage of the Anti–Drug Abuse Act of 1986, Congress established basic sentencing levels for crack cocaine offenses. Under 21 U.S.C. § 841(b)(1)(B)(iii), a person convicted of possession with intent to distribute five grams or more of crack cocaine is subject to a mandatory minimum of five years and a maximum of 40 years in prison. In the present case, the defendant pleaded guilty to possessing with intent to distribute 23 grams of crack. Under the Sentencing Guidelines, he was assigned a sentencing range of 78 to 97 months. The District Court, finding that his sentencing range should begin at the mandatory minimum, departed downward to 60 months, the mandatory minimum under 21 U.S.C. § 841(b). This was error. A reading of § 2D1.1 and the related commentary clearly indicates that the Sentencing Commission adequately considered the established mandatory minimums when it created its sentencing ranges. The commentary to § 2D1.1 states:

The base offense levels in § 2D1.1 are either provided directly by the Anti–Drug Abuse Act of 1986 or are proportional to the levels established by statute, and applied to all unlawful trafficking. Levels 32 and 26 in the drug quantity table are the distinctions provided by the Anti–Drug Abuse Act; however, further refinement of drug amounts is essential to provide a logical sentencing structure for drug offenses. To determine these finer distinctions, the Commission consulted numerous experts and practitioners, including authorities at the Drug Enforcement Administration, chemists, attorneys, probation officers,

and members of the Organized Crime Drug Enforcement Task Forces, who also advocate the necessity of these distinctions.

The base offense levels at level 26 and 32 establish Guideline ranges with a lower limit as close to the statutory minimum as possible; *e.g.*, level 32 ranges from 121 to 151 months, where the statutory minimum is ten years or 120 months.

In the present case, the defendant had a limited criminal history, which resulted in his being given the lowest criminal history category, I. Had he possessed an amount of crack between five grams (the statutory minimum) and 20 grams, with no other aggravating circumstances, he would have received a base offense level of 26 and a sentencing range of 63 to 78 months. The bottom of this level is close to the mandatory minimum established in 21 U.S.C. § 841(b)(1)(B)(iii). In this case, however, Lattimore possessed 23 grams of crack. This amount raised his offense level to 28 and produced a Guideline range of 78 to 97 months. This sentence reflects the aim of the Guidelines to provide incremental and graduated sentencing. Such a sentencing scheme does not run afoul of the mandatory minimum created by Congress. This sentencing range fits comfortably within the statutory range of 5 to 40 years provided in 21 U.S.C. § 841(b)(1)(B)(iii) and reflects the appropriate sentence for this particular defendant and this particular crime.

Section 5G1.1 further evidences the Commission's consideration of the mandatory minimums created by Congress. Under § 5G1.1(a), if the statutory maximum sentence is less than the minimum sentence contained in the Sentencing Guidelines, the statutory maximum will be the defendant's sentence. Thus, if the defendant is subject to a statutory maximum of five years (60 months), and his Sentencing Guideline range is 78 to 97 months, defendant's sentence would be 60 months. In the reverse situation, under § 5G1.1(b), if the statutory minimum sentence is greater than the maximum sentence under the Guidelines, the defendant's sentence will be raised to meet the statutory minimum. Thus, if the defendant is facing a five year mandatory minimum sentence (like Lattimore in this case) and he is given a Guideline range of 46 to 57 months, his sentence will be five years, the mandatory minimum. Furthermore, § 5G1.1(c) states that the defendant may be sentenced to any term of months contained within his applicable Guideline range, provided that he is sentenced to no more than the statutory maximum and no less than the statutory minimum. These statements reflect the Commission's regard for the mandatory minimums established in 21 U.S.C. § 841(b).

### III.

We deem appropriate also to address the District Court's statements concerning racial disparity in sentencing under the Guidelines. The District Court stated:

[T]his Court is mindful of the recent observations made by the chairman of the Sentencing Guideline Commission, which have been invoked in the public press, showing that the courts and the Commission are recognizing that disparities in contravention of the goals of the sentencing guidelines are being imposed based upon the extraordinary penalties invoked for crack cocaine as well as on the imposition of mandatory minimums. The fact that those disparities are now rearing their head and they are being brought to the attention of the Congress, the popular press, the Sentencing Guideline Commission, this Court would be blind were it to turn its view from that.

Chairman Wilkins of the Commission has observed that those sentences have again reintroduced racial disparities and variances, the very kind that the guidelines were designed to reduce. The mandatory—the publication called "Mandatory Minimum Penalties," or the section of the Guideline Commission Report, "Mandatory Minimum Penalties in the Federal Criminal Justice System," which report was produced in August of 1991, makes reference to a number of these factors. I recognize the obvious purpose of mandatory minimums, and that would call for the invocation of consistent and substan-

tial penalties for drug offenses, but I also recognize that the authorization for the Sentencing Guideline Commission directed by congressional imposition, that a court ought to "impose a sentence sufficient but not greater than necessary" to promote respect for the law, deter criminal conduct, protect the public, and provide the defendant with needed training or treatment, citing 18 U.S.C. § 3553(a). Sentencing Transcript 12–13.

This argument echoes those raised by the Supreme Court of Minnesota when it overturned that state's sentencing guidelines for crack-cocaine sentences. See *State v. Russell*, 477 N.W.2d 886 (Minn. 1991) (applying the Minnesota Constitution). In no fewer than five opinions, this Court has joined with other circuits[1] in rejecting similar attacks on the United States Sentencing Guidelines under the equal-protection component of the Fifth Amendment. See, *e.g., United States v. Willis*, 967 F.2d 1220, 1225 (8th Cir.1992); *United States v. Simmons*, 964 F.2d 763, 767 (8th Cir.1992); *United States v. Johnson*, 944 F.2d 396, 404 (8th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991); *United States v. House*, 939 F.2d 659, 664 (8th Cir.1991); *United States v. Buckner*, 894 F.2d 975, 978–80 (8th Cir.1990). We take this opportunity to reject them again.

In challenging crack sentences under the Due Process Clause, defendants have objected to the 100:1 ratio between crack sentences and sentences for powder cocaine. Under the current system, a defendant will receive "the same minimum sentence for crimes involving 50 grams or more of a substance containing cocaine base [crack] as [he] does for crimes involving 5,000 grams or more of ordinary cocaine." *Buckner*, 894 F.2d at 978. In examining this ratio, the *Buckner* Court, in an extended discussion, held that Congress clearly had rational motives for creating this distinction. Among these reasons were the potency of the drug, the ease with which

drug dealers can carry and conceal it, the highly addictive nature of the drug, and the violence which often accompanies trade in it. The 100:1 ratio between crack and powder-cocaine sentencing is "rationally related to Congress's objective of protecting the public welfare." *Id.* at 980.

The equal-protection challenge to crack sentences focuses on the argument that these sentences disproportionately subject minorities to longer prison sentences than whites. In support of these arguments, statistics have been presented which tend to illustrate this dichotomy. See, *e.g., State v. Russell, supra*, 477 N.W.2d at 887 n. 1 (in 1988, 96.6% of those charged with crack offenses were black, and 79.6% of those charged with powder cocaine offenses were white). On their face, however, these numbers do not indicate a violation of equal protection in the federal constitutional sense.

Under traditional equal-protection analysis, "even if a neutral law has a disproportionately adverse impact upon a racial minority, it is unconstitutional ... only if that impact can be traced to a discriminatory purpose." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979). The phrase "[d]iscriminatory purpose ... implies that the decisionmaker, in this case [Congress], selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 279, 99 S.Ct. at 2296. In the present case, the "legitimate noninvidious purposes of a law cannot be missed." *Id.* at 275, 99 S.Ct. at 2294.

There is not the slightest bit of evidence which would indicate that Congress or the Sentencing Commission had a racially discriminatory motive in mind when it crafted the Guidelines with extended sentences for crack felonies. All evidence points to the fact that Congress was reacting to the dramatic appearance of crack on America's

**1.** See, *e.g., United States v. Galloway*, 951 F.2d 64 (5th Cir.1992); *United States v. Turner*, 928 F.2d 956 (10th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991); *United States v. Cyrus*, 890 F.2d 1245 (D.C.Cir.1989); *United States v. Malone*, 886 F.2d 1162 (9th Cir.1989); *United States v. Solomon*, 848 F.2d 156 (11th Cir.1988).

streets and the violent impact crack would have upon the drug trade in the United States, when it established the harsh sentences for crack offenses. See, *e.g., Buckner*, 894 F.2d at 978–79 n. 9. These were clearly rational motives geared to reach a rational end. There was no discriminatory intent and no equal-protection violation.

This is not to say that a racially disparate impact is not a serious matter. Either Congress or the Sentencing Commission might decide to change the Guidelines or the harsh mandatory minimum sentences for crack offenses. They might believe, as a matter of policy, that racial disparities in sentencing are a good reason for such a change. It is for them, not the courts, to make this decision. Our job is to decide whether the Guidelines or the statute run counter to equal-protection principles in the constitutional sense. We hold that they do not.

The sentence is reversed, and the cause remanded to the District Court with instructions to enter a sentence within the Guideline range.

BRIGHT, Senior Circuit Judge, dissenting.

In *United States v. Wint*, 974 F.2d 961 (8th Cir.1992), this court (Judges Wollman, Bright and Ross) affirmed Judge Rosenbaum's upward departure from the Sentencing Guidelines. In that case, Judge Rosenbaum departed upward for a valid reason: the Sentencing Commission had not considered the severity of the offender's conduct in calculating the offender's sentencing range. In the instant case, the majority reverses Judge Rosenbaum for a six-month downward departure from the guideline range for perfectly good reasons.

Under 18 U.S.C. section 3553(b) (1988), a district court has the authority to depart from the guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

Judge Rosenbaum identified two mitigating circumstances warranting departure.

First, the Commission failed to consider the impact of the mandatory minimum sentences created by Congress in drafting the Guidelines. Congress mandated a minimum sentence of sixty months for Lattimore's crime, possessing with intent to distribute more than five grams of crack. 21 U.S.C. § 841(b)(1)(B)(iii) (1988). Obviously, the Sentencing Commission was aware of the statutory minimum sentences when it drafted the applicable Guidelines for Lattimore's offense, as indicated *ante*, at 964–965. However, the Commission failed to honor Congress' express intent from the language of the law when the Commission issued those Guidelines. The guideline range for an offender convicted of possessing five grams of crack is sixty-three to seventy-eight months. Thus, although Congress intended the minimum sentence for such a crime to be sixty months, the Commission ignored that intent and set its minimum sentence at sixty-three months.

Some would argue that this difference does not matter because Lattimore was sentenced for possessing not five grams of crack, but twenty-three grams of crack. However, by setting the lowest sentencing range at a level above that which Congress intended, the Commission skewed upward all the sentencing ranges for greater amounts of crack. The Commission uses a consistent mathematical formula in calculating the sentencing ranges for various offense levels. U.S.S.G. § 5A—Sentencing Table; *see also* 28 U.S.C. § 994(b)(2) (1988) (setting mathematical requirements for sentencing ranges calculated by Commission). If the Commission had set the minimum sentence for Lattimore's crime at sixty months, then that decision would have resulted in lower sentencing ranges for defendants convicted of handling larger amounts of crack. Therefore, by failing to consider Congress' intent in setting the minimum sentence for possessing five grams of crack, the Commission miscalculated the sentencing range for Lattimore's crime of possessing twenty-three grams of crack. The district judge recognized the

defect, which the Commission overlooked or improperly disregarded, and, therefore, made a proper departure.

A further ground given by the district court for its departure was that the Sentencing Commission failed to consider the racially disparate impact of the crack Guidelines when it drafted them. The majority misanalyzes the district court's statement, which it quotes *ante*, at 974–75. The district court did not hold that the guideline range recommended for Lattimore was in violation of the Due Process Clause. Thus, the majority's recitation of this court's decisions rejecting due process challenges to the 100:1 ratio for crack is irrelevant. The district court noted the racial discrimination that has resulted from the mandatory minimum sentences for crack, and the accompanying Guidelines, serve as grounds for departure, not as a basis to declare the statute unconstitutional.

Although statistics differentiating crack and powder cocaine do not exist on the federal level, in Minnesota (where Lattimore's crime occurred), 96.9% of the people charged in state court with using crack in 1988 were black. In the same year, 79.6% of the people charged with using powder cocaine were white. *State v. Russell,* 477 N.W.2d 886, 887 n. 1 (Minn.1991).

The Federal Judicial Center released a report this year documenting racial disparity among offenders in the federal system. Federal Judicial Center, *The General Effect of Mandatory Minimum Prison Terms* 20–21 (1991). According to the study, in 1984 the average sentence for blacks in the federal system, after controlling for several offense and offender factors, was 28% higher than the average sentence for whites. In 1990, that disparity had risen to 49%. *Id.*

As the majority notes, the racial disparities created by the mandatory minimum sentences and the Guidelines are a "serious matter." Although such disparities by themselves may not violate the Equal Protection Clause, they constitute a mitigating factor which has surfaced since the drafting of the drug offense Guidelines by the Commission and on which the Commission has neither considered nor taken action.

Thus, because the Sentencing Commission skewed the Guidelines by overlooking Congress' minimum sentence and further because the Sentencing Commission never considered the racial disparity resulting from crack Guidelines, the district court possessed the authority to depart downward from the Guidelines, but not below the mandatory minimum of sixty months plus twelve months for the weapon possession.

The majority disregards Judge Rosenbaum's decision, resting on sound grounds, to give a downward departure from the Guidelines. In my view, Judge Rosenbaum, an able and thoughtful district judge, should be commended for noting the Sentencing Commission's error in setting guidelines above Congressional dictates, and in again calling attention in a judicial decision to the racially disparate impact of federal criminal sentencing in drug cases. He has followed a proper course and should be affirmed.