19 F.3d 1430
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio Clifford McMILLAN, Defendant-Appellant.
 No. 92-5829.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 28, 1993.
Decided March 25, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Fox, Chief District Judge. (CR-92-74-01-5)
 Jack Benjamin Crawley, Jr., Raleigh, N.C., for appellant.
 Thomas Michael Gannon, United States Department of Justice, Washington, D.C., for appellee.
 On Brief: James R. Dedrick, U.S. Atty., Jane H. Jolly, Asst. U.S. Atty., United States Department of Justice, Washington, D.C., for appellee.
 E.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 McMillan appeals his conviction and sentence, raising points of error related to his trial and the district court's findings at sentencing. For the reasons stated below, we conclude that there is no merit to McMillan's assignments of error. Therefore, the judgment of the district court is affirmed.
 
 I.
 
 2
 McMillan was indicted on June 25, 1992 on one count of conspiring to possess with intent to distribute and one count of possession with intent to distribute cocaine base (crack) in Raleigh, North Carolina.[1] Pursuant to a consent search conducted at a Raleigh residence on June 2, 1992 where McMillan was located, police seized approximately 292 grams of crack held in 14 plastic bags and contained in a larger plastic bag inside a toilet.[2] McMillan's fingerprints were lifted from three of the small bags, and his arrest and the indictment followed.
 
 
 3
 At trial, Michael Griffin testified that McMillan had travelled with him to New York on June 1, 1992, purchased approximately 292 grams of crack cocaine and returned to Raleigh on the morning of June 2, 1992. The government introduced Detective Salman, over McMillan's objection, who testified as to McMillan's April, 1992 arrest for possession of a small amount of crack cocaine. During presentation of the defense, McMillan attempted to establish an alibi by introducing the testimony of his special education teacher, Mary Williams, who stated that she had seen McMillan on the morning of June 2, 1992 and that McMillan had a behavior handicap. When McMillan himself took the stand, the district judge propounded several questions to him in an attempt to clarify the sequence of events surrounding the offense. The court cautioned the jury that its questioning should not be construed as an expression of interest in the answers given. (J.A. 382).
 
 
 4
 Following the evidence, the court charged the jury but declined to give McMillan's instruction relating to a co-defendant's plea agreement. The jury subsequently returned guilty verdicts on both counts in the indictment.
 
 II.
 
 5
 In his first assignments of error, McMillan attacks his conviction for various reasons, including the admissibility of evidence, the court's questioning of him and the court's failure to adopt his jury instruction relating to a co-defendant's plea agreement.
 
 A.
 
 6
 McMillan first assigns error to the court's admission of Rule 404(b) evidence relating to his April, 1992 arrest for crack possession, arguing the evidence was irrelevant and prejudicial. We review the district court's admission of the extrinsic act evidence here for abuse of discretion. See United States v. Mark, 943 F.2d 444, 447 (4th Cir.1991). We have previously held that evidence of prior bad acts is admissible if it is relevant to an issue other than character, is necessary and reliable. United States v. McLamb, 985 F.2d 1284, 1289 (4th Cir.1993) (citing United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988)); Mark, 943 F.2d at 447. Recognizing that the defendant's plea of not guilty places his state of mind in issue, McLamb, 985 F.2d at 1289, the Rule 404(b) evidence offered to prove mental state must be relevant, that is, sufficiently related to the charged offense. United States v. Hernandez, 975 F.2d 1035, 1039 (4th Cir.1992) (citing Rawle, 845 F.2d at 1247 n. 3). When the government offers evidence of an unrelated bad act to show intent to commit the present crime, that evidence may not be relevant, and thereby not admissible, "when the unrelated bad act is 'tenuous and remote in time from the charges in the indictment.' " Hernandez, 975 F.2d at 1039 (citing United States v. Cole, 491 F.2d 1276, 1279 (4th Cir.1974)). Where the defendant previously committed acts similar to those for which he is presently being tried, however, "there can be little doubt that they are both relevant and necessary to the government's efforts to demonstrate that [the defendant] had the necessary specific intent" to commit the present offenses. Id. (citing Mark, 943 F.2d at 448).
 
 
 7
 Detective Salman testified at trial, over McMillan's objection, that he had arrested McMillan in April, 1992 for possessing 3.6 grams of crack cocaine. (J.A. 283). McMillan argues this evidence was irrelevant to the current offenses due to the wide disparity in the quantity of crack cocaine. However, the evidence tended to establish McMillan's knowledge of the conspiracy and distribution scheme, and it was relevant to an issue other than character--that of McMillan's intent to assist Griffin in distributing crack in the Raleigh area.[3] Evidence of the April, 1992 arrest for crack was thus neither G"tenuous [nor] remote in time," since the present indictment charged McMillan with distribution of crack in June, 1992. Because a defendant's knowledge and intent are elements of conspiracy under 21 U.S.C. Sec. 846 and of the substantive crime under Sec. 841(a)(1), see Mark, 943 F.2d at 448, the evidence was relevant.
 
 
 8
 The evidence here also provided indicia of reliability because it was Detective Salman himself who had arrested McMillan in April, 1992 for crack possession and who testified in this regard at McMillan's trial on the charges contained in the present indictment. Another indication of reliability was the fact that Detective Salman's version of the facts did not vary during cross-examination by defense counsel.
 
 
 9
 The government also asserts that the testimony relating to McMillan's April, 1992 arrest was necessary. The prior arrest was not an essential element of the current offenses, and we believe the record shows that the government's case against McMillan was overwhelming without the evidence concerning the prior arrest. However, the testimony was relevant to McMillan's intent to distribute narcotics and to his knowledge of the conspiracy to distribute crack cocaine, and, thus, was not unnecessary to the prosecution. See id..
 
 
 10
 Once the court finds the evidence is admissible for purposes of Rule 404(b), the evidence may still be excluded under Fed.R.Evid. 403. Mark, 943 F.2d at 448. Acknowledging that evidence of a prior arrest is by its nature prejudicial, the record does not show that Salman's testimony created undue prejudice to McMillan which substantially outweighed the probative value. Moreover, the court instructed the jury to limit its consideration of this evidence to the issue of McMillan's state of mind, reflecting a balancing of the probative value against the prejudice to McMillan. Id. at 449; see also Huddleston v. United States, 485 U.S. 681, 691-92 (1988) (defendant receives protection against prejudice where district court gives limiting instruction at time Rule 404(b) evidence is admitted).
 
 B.
 
 11
 McMillan next objects to the district court's questioning of him during the trial. He assigns error, claiming he was prejudiced by the questioning in that he was unable to establish his alibi. The government contends that McMillan failed to preserve the issue for appeal because defense counsel failed to object at trial. Although conceding that error can occur where the court's questioning rises to the level of plain error, the government insists that the questioning was not so prejudicial as to undermine fundamental fairness. United States v. Young, 470 U.S. 1, 16 (1985).
 
 
 12
 The district court's questioning of McMillan is reviewed for abuse of discretion. See United States v. Seeright, 978 F.2d 842 (4th Cir.1990). Rule 614(b) of the Federal Rules of Evidence permits the court to question witnesses, and a trial judge may interrupt counsel to clarify the issues presented. Seeright, 978 F.2d at 847 (citing Glasser v. United States, 315 U.S. 60, 82 (1942)). However, a new trial is warranted where the interrogation causes such prejudice to the defendant as to deny the right to a fair trial. Id. (citations omitted).
 
 
 13
 The court below stated that the purpose of its questioning was to clarify the chronology for the benefit of the court and the jury. (J.A. 373). Although McMillan's objection was not preserved for review on appeal, the district court did give a limiting instruction to the jury, cautioning against a construction of the court's questioning as an expression of its interest in McMillan's answers. (J.A. 382; 439-40). Plain error constituting an undermining of fundamental fairness did not occur because the district court was properly developing the facts for better comprehension by the jury. Accordingly, we reject McMillan's assignment of error in this regard.
 
 C.
 
 14
 McMillan next assigns error to the district court's failure to give his proposed instruction on a co-defendant's plea agreement. McMillan offered the following instruction relating to the motivation which Griffin had to testify falsely:
 
 
 15
 In this case, there has been testimony from a government witness who pled guilty after entering into an agreement with the government to testify. There is evidence that the government agreed to dismiss some charges against the witness and agreed not to prosecute him on other charges in exchange for the witness' agreement to plead guilty and testify at this trial against the defendant. The government also promised to bring the witness' cooperation to the attention of the sentencing court.
 
 
 16
 The government is permitted to enter into this kind of pleas [sic] agreement. You, in turn, may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone, if it convinces you of the defendant's guilt beyond a reasonable doubt.
 
 
 17
 However, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different than any ordinary witness. A witness who realizes that he may be able to obtain his own freedom, or receive a lighter sentence by giving testimony favorable to the prosecution, has a motive to testify falsely. Therefore, you must examine his testimony with caution and weigh it with great care. If, after scrutinizing his testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.
 
 
 18
 (J.A. 77).
 
 
 19
 The district court has broad discretion in determining the wording of the jury charge. United States v. Piche, 981 F.2d 706, 712 (4th Cir.1992), cert. denied, 61 U.S.L.W. 3772 (U.S. May 17, 1993). There is no abuse as long as the instruction given adequately and accurately covers the substance of the requested instruction. United States v. Pupo, 841 F.2d 1235, 1240 (4th Cir.), cert. denied, 488 U.S. 842 (1988).
 
 
 20
 The district court instructed the jury as follows:
 
 
 21
 In this case, the Government called as one of its witnesses an alleged accomplice, named as a co-defendant in the indictment, with whom the Government has entered into a plea agreement providing for a lesser sentence than he would otherwise be exposed to for the offenses to which he pled guilty. Such plea bargaining, as it's called, has been approved as lawful and proper, and is expressly provided for in rules of this Court.
 
 
 22
 An alleged accomplice, including one who has entered into a plea agreement with the Government, does not thereby become an incompetent witness. On the contrary, the testimony of such a witness may alone be of sufficient weight to sustain a verdict of guilty. However, the jury should keep in mind that such testimony is always to be received with caution and weighed with great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice unless you believe that testimony beyond a reasonable doubt; and the fact that an accomplice has entered into a plea of guilty to the offense charged is not evidence, in and of itself, of the guilt of any other person.
 
 
 23
 (J.A. 441-42). We cannot say that the district court committed abuse by giving this instruction. The court's charge sufficiently covered the thrust of McMillan's proposed instruction by cautioning the jury to scrutinize with care the testimony of the accomplice who has entered into a plea agreement with the government. Although McMillan's instruction placed greater emphasis on the witness' motive to fabricate, the court's charge was not inadequate or incorrect.
 
 III.
 
 24
 McMillan attacks several aspects of his sentencing, relating to the court's determination of the quantity of drugs, the failure to make downward adjustments to his offense level and to depart downward. At sentencing,[4] the court adopted the finding in the presentence report (PSR) that McMillan was responsible for 292.8 grams of cocaine base. The court rejected McMillan's requests to depart downward based upon the asserted racially disparate impact of the cocaine base Guidelines and McMillan's behavior handicap. The court imposed a sentence of 151 months on each count, with the sentences to run concurrently, after adopting the factual findings and the guideline application contained in the PSR. McMillan's objections are addressed below.
 
 A.
 
 25
 McMillan first contends that the district court erred in attributing the total amount of 292.8 grams of crack cocaine to him. McMillan suggests that the quantity should be between 50 and 150 grams and contends that 292 grams was not reasonably foreseeable to him. McMillan argues that the government failed to prove the amount by a preponderance of the evidence, and, thus, the court imposed his sentence in violation of the law.
 
 
 26
 Substantial deference is accorded to a district court's factual findings underlying the sentence imposed. United States v. Brooks, 957 F.2d 1138, 1148 (4th Cir.), cert. denied, 112 S.Ct. 3051 (1992). We review the district court's finding as to the quantity of drugs attributable to McMillan for clear error. 18 U.S.C. Sec. 3742(e); United States v. Williams, 986 F.2d 86, 90 (4th Cir.1993). The government produced evidence that McMillan travelled to New York with Griffin to purchase approximately 292 grams of crack cocaine for distribution. Further, the quantity of cocaine which was recovered at the Raleigh residence was not controverted at trial, and McMillan's fingerprints were identified on three of the plastic bags found in the bigger bag containing all 292 grams. This evidence was sufficient to satisfy the government's burden by a preponderance, Mark, 943 F.2d at 450, and it refutes McMillan's contention that the quantity was not reasonably foreseeable to him. The conclusion of the court below in this regard was not clearly erroneous.
 
 B.
 
 27
 McMillan next argues that he was entitled to a four point downward adjustment in his offense level for the minimal role he claims he played in the offense pursuant to U.S.S.G. Sec. 3B1.2(a). In the PSR, the probation officer concluded that McMillan was a street level dealer of crack cocaine who could not be a minimal participant as "his role is essential to the success of any drug trafficking organization." (J.A. 569). The district court subsequently adopted the factual findings contained in the PSR. (J.A. 482).
 
 
 28
 It was McMillan's burden to prove his minimal involvement by a preponderance of the evidence. See United States v. Campbell, 935 F.2d 39, 46 (4th Cir.), cert. denied, 112 S.Ct. 348 (1991). The Guidelines suggest that "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. Sec. 3B1.2(a), comment. (n.1). The commentary further states, however, that a downward adjustment for minimal participation is intended to be used "infrequently." Id. (n.2).[5] There was sufficient evidence presented at trial that McMillan had knowledge of the conspiracy to distribute crack to rebut his assertion that he was only minimally involved in the offense. Moreover, McMillan's prints were identified on three of the bags containing crack found at the Raleigh residence.
 
 
 29
 Giving deference to the district court's findings of fact, we hold that the court below did not clearly err in determining that McMillan played more than a minimal role in the offenses.
 
 C.
 
 30
 McMillan asserts two grounds which he claims provided bases for a downward departure: one, the disparate impact of the cocaine base Guidelines on blacks, and two, his behavior handicap. McMillan, a black male, insists that the disparate impact of the sentencing guidelines on minorities is a mitigating factor warranting departure, relying on the dissenting opinion of Judge Bright in United States v. Lattimore, 974 F.2d 971, 976-77 (8th Cir.1992), cert. denied, 113 S.Ct. 1819 (1993).
 
 
 31
 The Guidelines state that race is not a relevant factor in making a sentencing determination. See U.S.S.G. Sec. 5H1.10. Although the studies cited by the dissent in Lattimore indicate a disparity in sentences among blacks, see Lattimore, 974 F.2d at 976 (Bright, J., dissenting), the Lattimore majority rejected the argument, noting that there is no evidence that Congress intended to single out minorities for disparate treatment. Id. at 975. The court identified as the focus of the cocaine base Guidelines the punishment of all offenders who deal in dangerous drugs. Id. at 975-76 (citing United States v. Buckner, 894 F.2d 975, 978-79 n. 9 (8th Cir.1990)). We have previously stated our agreement with the conclusion of the majority opinion in Lattimore and similarly reject the equal protection argument here. See United States v. Bynum, 3 F.3d 769, 774-75 (4th Cir.1993). Because McMillan's sentence does not violate equal protection principles, this court defers to Congress to rectify the disparate impact, if any, which drug sentences have on minorities.
 
 
 32
 McMillan also argues that Williams' testimony relating to his behavior handicap suggests a significantly diminished mental capacity warranting departure under Sec. 5K2.13 of the Guidelines. McMillan assigns error to the court's refusal to depart. We have held that a sentencing court's refusal to depart downward is not reviewable on appeal, United States v. Meitinger, 901 F.2d 27, 29 (4th Cir.), cert. denied, 111 S.Ct. 519 (1990); United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir.1988), cert. denied, 111 S.Ct. 65 (1990), unless the refusal is based upon a believed lack of authority to do so. United States v. Hall, 977 F.2d 861 (4th Cir.1992). The record before us reveals nothing to indicate that the district court believed it lacked authority to depart given appropriate circumstances. Indeed, there was adequate reason presented to the district court to decline departure. Moreover, even if we were to review the objection, the probation officer disagreed with McMillan's assertion of diminished capacity, arguing that all law offenders exhibit immature behavior. (J.A. 571). The sentencing court's adoption of the findings of the probation officer is not clearly erroneous, and we, thus, would reject on its merits as well the attack on the court's refusal to depart.
 
 IV.
 
 33
 Finding no merit in any of McMillan's assignments of error relating to his conviction or sentence, the judgment of the district court is hereby affirmed.
 
 
 
 [1]
 A superseding indictment was returned against McMillian on August 18, 1992 making minor and technical changes
 
 
 [2]
 Police received information after arresting Michael Stephon Griffin that crack cocaine was located at a Raleigh residence. Griffin stated that only 2 ounces of the total amount of 10 ounces belonged to him and that he had purchased the crack at a local grocery store. (J.A. 235)
 
 
 [3]
 Defense counsel raised the issue of McMillian's knowledge in his opening statement, (J.A. 116), thus making the issue a relevant one
 
 
 [4]
 The Honorable Franklin T. Dupree presided over the trial held August 25-27, 1992, and the Honorable James C. Fox presided at the sentencing hearing held November 23, 1992
 
 
 [5]
 The Guidelines commentary is authoritative for explanation unless it is unlawful or inconsistent with the Guidelines. Stinson v. United States, 113 S.Ct. 1913 (1993)