_____

Nos. 95-4104NE, 95-4105NE, 95-4107NE, 95-4108NE
_____


_____

No. 95-4104NE                               *
_____                             *
                                            *
United States of America,                   *
                                            *
           Plaintiff-Appellee,              *
                                            *
     v.                                     *
                                            *
Martin Lewis,                               *
                                            *
           Defendant-Appellant.             *
                                            *
_____                             *
                                            *
No. 95-4105NE                               *
_____                             *  On Appeal from the United
                                            *  States District Court
United States of America,                   *  for the District of
                                            *  Nebraska.
           Plaintiff-Appellee,              *
                                            *
     v.                                     *
                                            *
Delano Eugene Maxwell,                      *
                                            *
           Defendant-Appellant.             *
                                            *
_____                             *
                                            *
No. 95-4107NE                               *
_____                             *
                                            *
United States of America,                   *
                                            *
           Plaintiff-Appellee,              *
                                            *
     v.                                     *
                                            *
Hassan Majied,                              *
                                            *
           Defendant-Appellant.             *

```
                          *
                          *
    No. 95-4108NE          *
_____               *
                          *
United States of America,  *
                          *
        Plaintiff-Appellee,  *
                          *
    v.                     *
                          *
Chester Davis,            *
                          *
        Defendant-Appellant.    *
```

                    Submitted:  June 14, 1996

                      Filed:  July 22, 1996
                    _____

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN, Circuit Judge, and
     KORNMANN,[*] District Judge.
                    _____

RICHARD S. ARNOLD, Chief Judge.


     In this case we are asked to hold that recent developments concerning
the Sentencing Guidelines' 100:1 ratio between "crack" and powder cocaine[1]
justify a downward departure from the sentences prescribed by the
Guidelines for "crack" offenses.  The District Court[2] rejected this
contention, and we affirm.

-------------------------------------------

     *The Hon. Charles B. Kornmann, United States District Judge
for the District of South Dakota, sitting by designation.

     [1]For sentencing purposes, cocaine base, or "crack," is "worth"
100 times as much as cocaine powder.  See 21 U.S.C. § 841(b):
U.S.S.G. § 2D1.1.  This harsh rule results in severe sentences for
crimes involving relatively small amounts of crack cocaine, see
United States v. Willis, 967 F.2d 1220, 1226 (8th Cir. 1992)
(Heaney, J., concurring).

     [2]The Hon. Lyle E. Strom, United States District Judge for the
District of Nebraska.

I.

A jury convicted the appellants of various drug-related crimes.  At the initial sentencing, the District Court rejected the appellants' equal-protection challenge to the 100:1 crack / powder ratio, but nonetheless departed downward from the applicable guideline range.  The Court noted the ratio's disparate impact on black defendants and stated that "`[t]his disparate impact was not contemplated by Congress nor was it considered by the Sentencing Commission in developing the guideline ranges for users of crack cocaine.'"  United States v. Maxwell, 25 F.3d 1389, 1400 (8th Cir.) (citation omitted), cert. denied, 115 S. Ct. 610 (1994).  Delano Maxwell and Hassan Majied received 20-year prison sentences; Martin Lewis and Chester Davis were given 10-year terms.

We reversed, and remanded the case for resentencing, holding that

> [W]hile [the] racially disparate impact [of the ratio] may be a serious matter, it is not a matter for the courts, and, therefore, not a basis upon which a court may rely to impose a sentence outside of the applicable Guidelines range.

Id. at 1401 (citation omitted); see also United States v. Lattimore, 974 F.2d 971, 976 (8th Cir. 1992) ("This is not to say that a racially disparate impact is not a serious matter."), cert. denied, 507 U.S. 1020 (1993).  We noted that "Congress specifically intended to provide more severe penalties for cocaine base . . .."  Maxwell, 25 F.3d at 1401; see also Lattimore, 974 F.2d at 975-76 ("Congress was reacting to the dramatic appearance of crack on America's streets and the violent impact crack would have upon the drug trade in the United States . . .."); see generally United States v. Buckner, 894 F.2d 975, 978-980 & n.9 (8th Cir. 1990) (describing legislative history).

At resentencing, the appellants again moved for downward departure. In support, they pointed to (1) a recent statement by the President recognizing the disparity between sentences for crack and sentences for cocaine powder, Presidential Statement on Signing S. 1254, 1995 WL 634347 (Oct. 30, 1995); (2) the Sentencing Commission's recent recommendation against the 100:1 ratio, U.S Sentencing Commission, Special Report to the Congress: Cocaine and Federal Sentencing Policy 198-200 (1995); and (3) Public Law 104-38 (S. 1254), which rejected the Commission's recommendations but directed it to submit new recommendations for changing the drug-quantity ratio.

The District Court rejected (reluctantly) the appellants' motions for downward departure. The Court stated:

> It's not that I disagree with [the motions]. I'm denying [them] because I don't believe I have the authority to depart downward . . .. If I thought I had the authority to depart . . ., I would depart. But I don't believe I have the authority to do it, and it is for that reason that I deny the motion to depart.

Maxwell Sentencing Hearing, at 12 (Nov. 20, 1995). The Court then sentenced Maxwell and Majied to 30-year prison terms; Davis, to 14 years; and Lewis, to 12 years and seven months. The appellants now argue that the District Court erred in concluding that it lacked the authority to depart. Put differently, the appellants believe that this Court was wrong, and the District Court was right, the first time around. We disagree, and we affirm.[3]

---

[3]The United States argues that this Court may not review the District Court's "decision not to depart." In this case, though, "the real question is whether the district court was correct in its opinion that it had no power to depart, not whether it would have chosen to depart if it had the power." United States v. Kelley, 956 F.2d 748, 751 (8th Cir. 1992). The District Court's decision involves a "question of law," id., which we review de novo. See Koon v. United States, --- S. Ct. ---, 1996 WL 315800 at *13 (U.S., June 13, 1996) (noting that "whether a factor is a permissible basis for departure under any circumstances is a question of law . . .").

We heard arguments in this case the day after the Supreme Court decided <u>Koon v. United States</u>, --- S. Ct. ---, 1996 WL 315800 (U.S., June 13, 1996). Counsel for appellants, demonstrating a commendable familiarity with the law's latest developments, brought the case to our attention. We conclude, though, for reasons discussed below, that <u>Koon</u> does not support the appellants' argument.

II.

A district court may impose a sentence outside the applicable guideline range if the court finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . .." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. The key question is whether an individual case presents a "characteristic or circumstance [which] distinguishes the case from the `heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing." § 5K2.0. Put differently, is the case "atypical," "one to which a particular guideline linguistically applies but where the conduct significantly differs from the norm"? <u>Koon</u>, 1996 WL 315800 at *9 (quoting U.S.S.G. ch.1, pt.A, intro. comment 4(b)). Such cases are "extremely rare." § 5K2.0 cmt.

We agree with the District Court that it had no authority to depart. The crack / powder ratio and its disparate impact are not "aggravating or mitigating circumstances" particular to the appellants' case which distinguish theirs from "heartland" cases. Section 5K2.0 is designed to allow district courts to "consider every convicted person <u>as an individual</u> and every case as a unique

study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  Koon, 1996 WL 315800 at *21 (emphasis added).[4]  But all defendants convicted of crack-related crimes receive harsh sentences; the appellants' cases are no different from any other, "heartland" crack cases.  See United States v. Fike, 82 F.3d 1315, 1326 (5th Cir. 1996) ("Appellants have advanced no theory which would distinguish their cases from the `heartland' of crack offenses.").  The appellants contend, in effect, that black defendants should receive less severe sentences than other defendants convicted of crack-related offenses, a contention we must reject.[5]

In any event, the appellants' new evidence (the Commission's recommendations, the President's statement, etc.) does not prove what they think it does.  This evidence leaves no room to argue that Congress has not considered the ratio's disparate impact on black defendants or that Congress did not intend the long sentences the ratio compels.  It is true that the Sentencing Commission "strongly recommend[ed] against a 100-to-1 quantity ratio" and proposed a new model focusing on "offender-specific guideline enhancements," such as using juveniles in crack-dealing.  U.S. Sentencing Commission, Special Report, supra.  But, as we already noted in United States v. Higgs, 72 F.3d 69, 70 (8th Cir. 1995), Congress has rejected the Sentencing Commission's recommendation.  We held in Higgs that, the Commission's recommendation

---

[4]The Commentary to § 5K2.0 states in part:

> In the absence of a characteristic or circumstance that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guideline range is not authorized.

[5]Under the Guidelines, a defendant's race is one of the few factors that is never a permissible reason for departure.  Maxwell, 25 F.3d at 1401; Koon, 1996 WL 315800 at *9 (citing U.S.S.G. § 5H1.10).

notwithstanding, the crack-to-powder ratio's disparate impact was "not a basis upon which a court may rely to impose a sentence outside the applicable Guidelines range."  Id. (citing Maxwell, 25 F.3d at 1401).

As for the President's statement, it doesn't support the appellants' position either.  True, the President recognized the disparity between sentences for crack and powder cocaine, said that "[s]ome adjustment is warranted", and noted that the law he was signing (Pub. L. 104-38) directed the Commission to "undertake additional review of these issues . . .." Presidential Statement, supra.  More to the point, though, the President also declared:

> Today I reject United States Sentencing Commission proposals that would equalize penalties for crack and powder cocaine distribution by dramatically reducing the penalties for crack. . . .
>
> Trafficking in crack, and the violence it fosters, has a devastating impact on communities across America, especially inner-city communities. Tough penalties for crack trafficking are required because of the effect on individuals and families, related gang activity, turf battles, and other violence.

Id.  Finally, as the President's remarks signing the Law make clear, Pub. L. 104-38 itself also undermines the appellants' position.  The law is titled "An Act to disapprove of amendments to the Federal Sentencing Guidelines relating to lowering of crack sentences . . .," and it provides that the Commission's proposed amendments concerning the 100:1 ratio "are hereby disapproved and shall not take effect."  And although the law did direct the Commission to study the matter further, it also stated that "the sentence imposed for trafficking in a quantity of crack cocaine should generally exceed the sentence imposed for trafficking in a like quantity of powder cocaine".  Id. at § 2(a)(1)(A).  So, the appellants' new "evidence," far from proving that the 100:1 ratio's

disparate impact or severity calls for a downward departure, instead proves that Congress (and the President and the Sentencing Commission) have considered the matter, and that the ratio, its disparate impact notwithstanding, remains the law.  (Disparate impact is not enough to make a law unconstitutional under the equal-protection component of the Due Process Clause of the Fifth Amendment.  Discriminatory purpose is required, and no such purpose has been proved.)

The Supreme Court's recent decision in Koon supports our analysis. In Koon, the Court decided that, even under the Guidelines, district courts "retain much of their traditional sentencing discretion" and, therefore, trial courts' decisions to depart downward--when departure is authorized-- should be reviewed for abuse of discretion, rather than de novo.  Koon, 1996 WL 315800 at *11-13.  That case provides no support, though, for appellants' claim, which is, essentially, that the federal courts have the power to depart downward in crack-related cases because Congress has adopted what appellants believe is an unwise sentencing policy.  Koon in no way undercuts our conclusion that § 5K2.0 gives district courts the power to depart for unusual circumstances peculiar to particular cases, and not for reasons common to a whole class of cases.[6]

In the end, nothing has changed since our prior opinion in this case: The 100:1 ratio's disparate impact on black defendants, which is without question a disturbing fact, is not a basis upon which a court may rely to depart downward.  See Maxwell, 25 F.3d at 1401; Higgs, 72 F.3d at 70; see also United States v. Arrington, 73 F.3d 144, 146 (7th Cir. 1996) (noting that "every other circuit to consider [the ratio's disparate impact] has concluded that [it]

---

[6]See Koon, 1996 WL 315800 at *19 (police officers' job loss could not be a reason for downward departure because "[i]t is to be expected that a government official would be subject to the career-related consequences petitioners faced . . .").

does not justify a downward departure from the guidelines") (citing cases); United States v. Anderson, 82 F.3d 436 (D.C. Cir. 1996) (discussing Pub. L. 104-38 and holding that Sentencing Commission's recommendation did not empower the district court to depart downward). As the new statute indicates, the Commission may re-examine this question and make a new recommendation. That new recommendation may be that the 100:1 ratio be changed, and "crack" sentences may someday be reduced. But that day is not yet, and it is our duty to apply the law as it exists today.

III.

It is not for us to decide whether the 100:1 ratio is wise or equitable; that is a question for the popularly chosen branches of government. See Lattimore, 974 F.2d at 976. They have made their view quite plain. We express our appreciation to appointed counsel for their diligent service in these appeals.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.