UNITED STATES of America,
Plaintiff–Appellee,

v.

Jesse James GALLOWAY,
Defendant–Appellant.

No. 91–5617
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 8, 1992.

Gerald H. Goldstein, Patrick T. Peranteau, Goldstein, Goldstein & Hilley, San Antonio, Tex., for defendant-appellant.

LeRoy M. Jahn, Chris K. Gober, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

PER CURIAM:

Jesse Galloway appeals the sentence he received, following a plea of guilty, for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Finding no error, we affirm.

I.

On September 14, 1990, a drug task force made up of federal and state drug enforcement officials executed a search warrant at Galloway's San Antonio, Texas, residence. During the search, approximately thirty-four grams of cocaine was seized, along with four guns, $24,677 in cash, various items of jewelry, and three vehicles. In all, the officers found and seized 21.94 grams of "crack" cocaine (free alkaloid cocaine, or

cocaine base) and 12.528 grams of cocaine hydrochloride.

A federal grand jury returned a two-count indictment against Galloway. Count one charged him with possession with intent to distribute cocaine in violation of section 841(a)(1), and count two charged him with unlawfully possessing a firearm during the commission of a drug felony in violation of 18 U.S.C. § 924(c). A month later, the government filed a bill of particulars serving notice on Galloway that the cocaine referred to in count one involved a quantity of cocaine base as well as a quantity of powdered cocaine. Pursuant to a written plea agreement with the government, Galloway pleaded guilty to count one and was sentenced.

## II.

The sole issue is whether the district court, at sentencing, properly rejected Galloway's argument that the crack cocaine provisions of the sentencing guidelines violate the equal protection and due process rights of black defendants. He argues that his federal constitutional rights to due process and equal protection were violated because the sentencing guidelines treat possession with intent to distribute crack cocaine more harshly than similar crimes involving powdered cocaine. While it is indeed true that the guidelines treat crimes involving crack cocaine more harshly than those involving other forms of cocaine, Galloway's constitutional arguments are devoid of merit.

■ Galloway first argues on due process grounds that there is no legitimate purpose for the disparity in the penalties for possession of crack and possession of powdered cocaine. The district court disagreed, finding that there was in fact a rational basis for the 100:1 ratio in the sentencing guidelines. Likewise, in *United States v. Thomas*, 932 F.2d 1085 (5th Cir.), *cert. denied,* — U.S. ——, and ——, 112 S.Ct. 264 and 428, 116 L.Ed.2d 217, and 447 (1991), we specifically addressed and rejected Galloway's argument, stating,

Cocaine base is a different drug from cocaine, and, because it is prepared for inhalation, concentrates and magnifies the effect of one gram of cocaine to such a degree that dealers profitably can sell it in very cheap yet still-potent quantities. Treating the two substances differently thus is not a due process violation, as when cocaine is changed into cocaine base, it becomes a different chemical substance. Congress need not treat dissimilar drugs similarly.

*Id.* at 1090 (citations omitted).

■ In his equal protection argument, Galloway contends that this disparity in penalties has a discriminatory impact on blacks because they are more likely to possess crack cocaine than whites, who are more likely to use other forms of cocaine. In order to establish a valid equal protection claim, however, more than simply disproportionate impact must be shown. "[E]ven if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose." *Personnel Adm'r v. Feeney*, 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979). *Accord United States v. Crew*, 916 F.2d 980, 984 (5th Cir.1990). Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group. *Feeney*, 442 U.S. at 279, 99 S.Ct. at 2296.

■ The government provided evidence of the intent of the United States Sentencing Commission when it adopted U.S.S.G. § 2D1.1, and evidence of the legislative history and intent of Congress when it enacted the Drug Abuse Act of 1986, none of which evinced any indicia of discriminatory intent. Galloway, on the other hand, was able to provide only vague statistical and testimonial evidence regarding the discriminatory impact of the crack provisions.[1]

1. Galloway's "statistical evidence" of discriminatory impact was derived from the testimony of

two witness: Louis F. Marquez, a United States Probation Officer for the Western District of

The district court's finding that there was no discriminatory intent behind the enactment and promulgation of section 2D1.1 appears to be correct. In any event, such a finding is reviewed only for clear error. *Mississippi State Chapter, Operation PUSH v. Mabus,* 932 F.2d 400, 408 (5th Cir.1991). No such clear error is apparent here.

■ As a result, the court's review of the crack provisions of the sentencing guidelines under the "rational basis" test was proper. *Rogers v. Lodge,* 458 U.S. 613, 617 n. 5, 102 S.Ct. 3272, 3275 n. 5, 73 L.Ed.2d 1012 (1982) ("Purposeful racial discrimination invokes the strictest scrutiny of adverse differential treatment. Absent such purpose, differential impact is subject only to the test of rationality.") (citation omitted). Under this test, the challenged statutory provision will survive an equal protection analysis if it bears a rational relationship to a legitimate end. *United States v. Thomas,* 900 F.2d 37, 39 (4th Cir.1990); *see also Hatten v. Rains,* 854 F.2d 687, 690–91 (5th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). Applying the rational basis test to the challenged guideline in the instant case, the district court properly found that the "one hundred to one ratio of cocaine to cocaine base in the sentencing guidelines is rationally related to Congress' objective of protecting the public welfare."

Claims similar to Galloway's have been rejected unanimously by other circuits. *See Thomas,* 900 F.2d at 39–40 (appellant did not, as here, argue purposeful racial discrimination, but court still found that penalty structure for crack offenses as out-

lined in 21 U.S.C. § 841(b) was rationally related to legitimate state end); *United States v. Johnson,* 944 F.2d 396, 404 n. 7 (8th Cir.) (court heard and rejected appellant's argument that purposeful discrimination as evidenced by discriminatory impact formed basis for 21 U.S.C. § 841(b)), *cert. denied* — U.S. —, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991); *United States v. Cyrus,* 890 F.2d 1245, 1248 (D.C.Cir.1989) (court finds a rational relationship between the disparity in crack and powdered cocaine sentencing provisions and a legitimate government purpose).

Galloway submits, in a supplement to his brief, the test of *State v. Russell,* 477 N.W.2d 886 (Minn.1991), in which the court struck down Minnesota's crack cocaine statute—virtually identical to the federal statute at issue in the instant case—as violative of the equal protection clause of the Fourteenth Amendment. As detailed above, however, the federal courts unequivocally have rejected the equal protection challenge to section 2D1.1. Moreover, the *Russell* court applied its own "rational basis" test to the statute—a test that differs significantly from that applied by the federal courts. *See id.* at 889–91 ("our stricter standard of rational basis review [different from] the more deferential federal standard").

Russell's argument on appeal is without merit. The judgment of sentence is AFFIRMED.

---

Texas, and Albert Mireles, Jr., an investigator with the Federal Public Defender's office for that district. Marquez testified that the probation office for the district maintained no statistics as to the race of individuals charged with crack or cocaine offenses because it was the stated policy of the Sentencing Commission that consideration of race in the imposition of the sentencing guidelines was an irrelevant factor. He testified that he, personally, recalled seeing presentence reports of black defendants involved with crack cocaine but did not recall seeing a presentence report of a white defendant involved with crack cocaine. However, Marquez testified that as a "statistical state-

ment" he had no personal knowledge of the races of crack defendants in the Western District of Texas.

Mireles testified that, at Galloway's request, he had reviewed the Public Defender's cases file of nineteen criminal cases brought in the San Antonio Division of the Western District. Those cases all involved crack cocaine and black defendants. Mireles testified that his testimony was limited to cases handled by the Public Defender's Office in the Western District and that he was not aware of any black defendants who had been charged with cocaine hydrochloride offenses.