August 3, 1994 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-2232

UNITED STATES,

Appellee,

v.

DARYL E. SINGLETERRY,

Defendant, Appellant.

ERRATA SHEET

The opinion of this court issued on July 18, 1994, is
amended as follows:

Page 4, third line from the bottom: Replace "Fed. R. Crim.
P. 39(a)" with "Fed. R. Crim. P. 29(a)."

United States Court of Appeals
For the First Circuit

No. 93-2232

UNITED STATES,

Appellee,

v.

DARYL E. SINGLETERRY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Torruella, Circuit Judge,

Coffin, Senior Circuit Judge,

and Stahl, Circuit Judge.

Stephen H. MacKenzie for appellant.

Michael M. DuBose, Assistant United States Attorney, with whom

Jay P. McCloskey, United States Attorney, was on brief for appellee.

July 18, 1994

STAHL, Circuit Judge. In this appeal, defendant-

appellant Daryl E. Singleterry contests his jury conviction

and resulting sentence for violation of federal drug

trafficking laws. Singleterry raises two issues for our

consideration. First, he protests the district court's

refusal to instruct the jury to determine whether the

prosecution produced sufficient evidence to establish the

trustworthiness of his voluntary, extrajudicial confession.

Second, Singleterry, who is black, maintains that his

sentence violates the equal protection component of the Fifth

Amendment because the difference in punishment for cocaine

base ("crack") offenses and cocaine ("cocaine powder")

offenses is either irrational or racially discriminatory.

Finding neither argument persuasive, we affirm.

I.

BACKGROUND

On January 14, 1993, Maine law enforcement agents,

responding to reports of drug dealing at the Days Inn in

Kittery, Maine, commenced surveillance of the motel. That

evening, they observed Jamee Landry, an associate of

Singleterry, exit Room 225 with George Wilson, another

Singleterry associate and suspected drug dealer. The two

entered Landry's car and drove to Portsmouth, New Hampshire,

where the agents lost their trail. Early the next morning,

-2-
2

after they saw Landry enter Room 225, the agents executed

warrants to search both Room 225 and Landry's car.

The search revealed a number of items probative of

ongoing, armed drug trafficking. The agents first entered

and searched Room 225, where they found Singleterry and

Landry. They seized $2061 and a wallet containing

Singleterry's driver's license from the pocket of a jacket on

a night table in the room. Elsewhere in the room, the agents

discovered two savings account passbooks, both in

Singleterry's name, with a combined balance of $5100. In

Landry's car, the agents found a plastic bag containing 6.46

grams of crack cocaine in the glove compartment, a leather

gun holster on the front passenger seat, as well as a fully

loaded semi-automatic handgun under the same seat.

After this search concluded, the agents arrested

Singleterry, and properly informed him of his "Miranda

rights." Singleterry then provided the agents with a

voluntary confession telling them that he personally paid

$250 to his source in Lawrence, Massachusetts, for the

cocaine base found in the vehicle. He also admitted that he

had stolen the handgun seized by the agents, explaining that

he needed the handgun to protect himself from individuals who

were jealous of his cocaine business. In addition,

Singleterry told the agents that he did not have a job, that

he had been dealing cocaine base for a considerable period of

-3-
3

time, and that the cash seized from his jacket pocket as well

as the money in his savings accounts were proceeds from his

sale of cocaine base in the Portsmouth, New Hampshire, area.

Finally, Singleterry stated that, as in this instance, he

purchased most of the cocaine base he sold from a source in

Lawrence or Lowell, Massachusetts. According to Singleterry,

he would ordinarily pay $250 for a quarter ounce of cocaine

base and then sell it for $1250.

Singleterry was charged in a three count indictment

with possession with intent to distribute cocaine, 21 U.S.C.

841(a)(1) and 841(b)(1)(B)(iii) (1988 & Supp. IV 1992)

(Count I), the use and carrying of a firearm in connection

with a drug trafficking offense, 18 U.S.C. 924(c) (1988 &

Supp. IV 1992) (Count II), and deriving certain personal

property from proceeds obtained as the result of drug

trafficking activity, 21 U.S.C. 853 (1988) (Count III).

The parties agreed to have the district court decide Count

III on the basis of the trial evidence.

At trial, the government introduced evidence

probative of the facts described above, relying heavily on

the agents' live testimony concerning Singleterry's

confession. At the close of the government's case in chief,

the defense moved for judgment of acquittal. See Fed. R.

Crim. P. 29(a). Defendant's primary contention was that the

government's evidence could not suffice to support a

-4-
4

conviction because the government did not adequately

corroborate Singleterry's confession. See Opper v. United

States, 348 U.S. 84 (1954) (prohibiting convictions on the

basis of uncorroborated confessions). The government argued,

inter alia, that there was ample evidence to demonstrate the

truth and accuracy of the confession. The district court

reserved judgment until the close of all the evidence. After

the defense presented no evidence, the court denied

defendant's motion in a detailed ruling from the bench.

Singleterry timely requested a jury instruction

that "as a matter of law a confession alone is not sufficient

evidence upon which to convict the defendant, that the

confession must be accompanied by additional corroborative

[evidence] or sufficient indicia of reliability." The

district court refused to do so, explaining that the

corroboration inquiry is for the court and not the jury.

According to the district court, the role of the jury is

simply to consider whether the evidence establishes each

element of the offense beyond a reasonable doubt, although

the jury is free to question the probative value of a

confession in light of the strength or weakness of the

corroborative evidence.

After deliberating for less than an hour, the jury

convicted Singleterry on Counts I and II. The district court

later issued an orderof forfeiture in resolution ofCount III.

-5-
5

At sentencing, the district court found that the

offense level, including relevant conduct, involved a total

of 73.66 grams of cocaine base, resulting in a base offense

level of 32. United States Sentencing Commission, Guidelines

Manual, 2D1.1 (Nov. 1993); see also 21 U.S.C.

841(b)(1)(B) (prescribing minimum and maximum sentences).

Because Singleterry had knowingly given false testimony at a

pre-trial suppression hearing, the court added a two-level

enhancement for obstruction of justice. U.S.S.G. 3C1.1.

With a total adjusted base offense level of 34 and a criminal

history category of III, the guideline range on Count I was

188 to 235 months.1 U.S.S.G. Ch.5, Pt.A. The district

court selected the minimum sentence of 188 months, imposing

as well the consecutive 60 month sentence mandated by 18

U.S.C. 924(c) for the firearm offense. In another ruling

from the bench, the district court rejected Singleterry's

argument that stiffer penalties for cocaine base offenses, as

opposed to cocaine powder offenses, violate Singleterry's

right to equal protection of the law.

1. If Singleterry had been convicted of possession with
intent to distribute cocaine powder, and if his relevant
conduct raised the total of cocaine powder involved to 73.66
grams, his base offense level would have been 16, adjusted to
18 after the two-level enhancement. U.S.S.G. 2D1.1 and

3C1.1; see also 21 U.S.C. 841(b)(1)(C) (prescribing maximum

sentences). With a criminal history category of III, the
guideline range on this count would have been 33 to 44
months.

-6-
6

II.

DISCUSSION

A. Trustworthiness of Confessions and the Role of the Jury

Singleterry contends that the district court

committed legal error when it refused to instruct the jury on

the need for corroboration of his confession. Specifically,

Singleterry urges us to adopt one of two propositions.

First, he suggests that, when the government's case rests

primarily on a defendant's confession, the district court

must instruct the jury to find the confession to be

trustworthy before considering it as evidence of guilt.

Second, Singleterry asserts that, even in the absence of a

general rule mandating such an instruction, the district

court is obliged to instruct the jury on the corroboration

requirement where the evidence of trustworthiness is so weak

that a jury might differ from the court in its resolution of

the question.

Whether the court must assign such a role to the

jury is a pure question of law subject to plenary review.

See, e.g., United States v. Gallo, 20 F.3d 7, 11 (1st Cir.

1994) (holding that de novo review is customary for questions

of law) (citing In re Howard, 996 F.2d 1320, 1327 (1st Cir.

1993)). Thus, although the district court's reasoning may

prove persuasive, and its conclusion coincide with our own,

-7-
7

we are free to reject a reasonable reading of the law in

favor of the interpretation we view as correct.

To begin with, we note that a defendant's own

statements are never considered to be hearsay when offered by

the government; they are treated as admissions, competent as

evidence of guilt without any special guarantee of their

trustworthiness. See Fed. R. Evid. 801(d)(2) & advisory

committee's note; see also United States v. Barletta, 652

F.2d 218, 219 (1st Cir. 1981). Nevertheless, there is a

danger that the jury will rush to credit a confession without

seriously considering whether the defendant confessed to a

crime he did not commit. As a result, the federal courts

have adopted common law rules designed to prevent a jury from

convicting the defendant solely on the basis of an

untrustworthy confession. The general rule is that a jury

cannot rely on an extrajudicial, post-offense confession,

even when voluntary, in the absence of "substantial

independent evidence which would tend to establish the

trustworthiness of [the] statement." Opper v. United States,

348 U.S. 84, 93 (1954). See also Smith v. United States, 348

U.S. 147 (1954); Warszower v. United States, 312 U.S. 342

(1941); United States v. O'Connell, 703 F.2d 645 (1st Cir.

1983).2 The Court has explained that independent proof of

2. Many states adhere to a more traditional formulation of
the corroboration rule, requiring independent proof of the
corpus delicti ("body of the crime"), i.e., evidence

-8-
8

the commission of the charged offense is not the only means

of establishing the trustworthiness of the defendant's

confession; another "available mode of corroboration is for

the independent evidence to bolster the confession itself and

thereby prove the offense `through' the statements of the

accused." Smith, 348 U.S. at 156.3

The doctrinal nature and procedural concomitants of

the trustworthiness requirement announced in Opper are not

entirely clear. Traditionally, the district court makes a

preliminary determination as to whether testimony about the

confession is sufficiently trustworthy for the jury to

consider the confession as evidence of guilt. See McCormick

145, at 562; Corey J. Ayling, Comment, Corroborating

Confessions: An Empirical Analysis of Legal Safeguards

independent of the confession showing that "(a) the injury or
harm constituting the crime occurred; [and] (b) this injury
or harm was done in a criminal manner." 1 McCormick on

Evidence 145, at 557 (John William Strong ed., 4th ed.

1992) (hereinafter "McCormick").

3. Singleterry misinterprets this comment as suggesting that
a full confession (one involving admissions to all elements
of the crime) automatically bolsters itself, eliminating the
need for proof of trustworthiness. According to Singleterry,
"under Opper and Smith, the prosecution may rely entirely on

a confession which is not even proven to be trustworthy and
put forth no evidence establishing the corpus delicti." This
is simply not so. The Court has never suggested that in
certain cases the government would be relieved of the burden
of proving the trustworthiness of a confession. Smith merely

stands for the proposition that in the absence of independent
evidence of the corpus delicti the government may establish

the trustworthiness of the confession with other evidence
typically used to bolster the credibility and reliability of
an out-of-court statement.

-9-
9

Against False Confessions, 1984 Wis. L. Rev. 1121, 1140

(hereinafter "Ayling"). In this respect, the Opper rule

essentially functions as a federal common law rule regulating

the admission of statements which "are much like hearsay,

[having had] neither the compulsion of the oath nor the test

of cross-examination." Opper, 348 U.S. at 90. See also

Ayling, supra, at 1136-37 & n.66 (arguing that the

corroboration rule "governs the admissibility of

evidence").4

4. Note that Federal Rule of Evidence 804(b)(3) provides an
important parallel. Under Rule 804(b)(3), a confession by
someone other than the accused is treated as hearsay
admissible as evidence of guilt if certain conditions are
satisfied. Rule 804(b)(3) rests on the assumption that, in
general, "persons will not make damaging statements against
themselves unless they are true." 4 Jack B. Weinstein &
Margaret A. Berger, Weinstein's Evidence 804(b)(3)[01], at

804-138 (1993). But such a confession cannot be used to
prove the defendant's guilt unless its use is necessitated by
the unavailability of the declarant for courtroom testimony.
Fed. R. Evid. 804(b). Additionally, we are wary of
individuals who, as a result of mental illness, a fit of
passion, a misplaced sense of sacrifice, or sheer mendacity,
falsely incriminate themselves in order to spare another.
Thus, "[a] statement tending to expose the declarant to
criminal liability and offered to exculpate the accused is
not admissible unless corroborating circumstances clearly
indicate the trustworthiness of the statement." Fed. R.
Evid. 804(b)(3). It is also significant that the
trustworthiness criterion of Rule 804(b)(3) is "cast in terms
of a requirement preliminary to admissibility," Fed. R. Evid.
804(b)(3) advisory committee's note. As such, the district
court makes the first and only official determination of
trustworthiness, although it may be proper to instruct the
jury that statements admissible under Rule 804(b)(3) "must be
carefully scrutinized, weighed with great care, and received
with caution." United States v. Miller, 987 F.2d 1462, 1465

(10th Cir. 1993).

-10-
10

At the same time, courts often characterize

corroboration requirements as governing the sufficiency of

the evidence. See, e.g., Warszower, 312 U.S. at 347-48

(holding that "[a]n uncorroborated confession . . . does not

as a matter of law establish beyond a reasonable doubt the

commission of a crime"); O'Connell, 703 F.2d at 647-48

(analyzing corroboration issue in rejecting challenge to

sufficiency of evidence); McCormick, supra, 145, at 561-63.

In contrast to a simple rule of admissibility, a rule of

sufficiency might theoretically allow the trial judge to

instruct the jury to make the final determination as to

whether a confession has been corroborated. See id.

(reporting that some state courts treat the corroboration

requirement as a jury issue); Ayling, supra, at 1136-41. The

Supreme Court has not ruled on the question, and neither this

circuit nor any other circuit has adopted such a broad

approach. But cf. United States v. Marshall, 863 F.2d 1285,

1287 (6th Cir. 1988) (holding that the district court should

have instructed the jury on the corroboration requirement

where "[t]he need for corroboration [was] apparent").

It is within the uncertain framework of sufficiency

that Singleterry positions his appeal. Singleterry does not

claim that the district court erred in admitting evidence of

his confession. Nor does he assert that the district court

improperly found that the confession was adequately

-11-
11

corroborated in denying the motion for judgment of

acquittal.5 Rather, Singleterry insists that, even after a

court has properly admitted evidence of a confession and

correctly tested the sufficiency of the evidence to support a

conviction, the court has a responsibility, either generally

or in certain cases, to instruct the jury to determine that

the confession is trustworthy before considering it as

evidence of guilt. This has never been the law in the

federal courts, and we decline to adopt such a rule today.

5. Two paragraphs in Singleterry's opening brief suggest
that his appeal comprehends a challenge to the district
court's denial of the motion for acquittal. Nonetheless,
Singleterry's reply brief states that "Appellant is not
arguing that the evidence was insufficient for the court to
determine that the corpus delicti existed. Appellant is not
arguing that . . . no rational trier of fact could find the
corpus delicti sufficient." In any event, it is apparent
that the district court did not err in finding that the
government's evidence adequately established the
trustworthiness of Singleterry's confession. Proof of the
presence in Landry's car of 6.46 grams of cocaine base -- a
controlled substance in an amount substantial enough to
suggest an intent to distribute -- independently establishes
the corpus delicti with respect to Count I. No more is

required to demonstrate the trustworthiness of Singleterry's
confession to the tangible crime of possession of cocaine
base with intent to distribute. See Wong Sun v. United

States, 371 U.S. 471, 489-90 n.15 (1963). That the

confession is trustworthy concerning admissions relative to
Count I is strong evidence that the same confession is
equally trustworthy concerning other admissions; namely, that
Singleterry used the gun found in Landry's car to protect
himself from rival drug dealers. Even if that admission were
not sufficient to show that Singleterry "use[d] or carrie[d]"
the gun "in relation to" his possession and intended
distribution of the 6.46 grams of cocaine base, 18 U.S.C.
924(c)(1), the government's other physical evidence --
particularly the proximity of Singleterry's loaded gun to the
cocaine base -- would most certainly allow a jury to reach
that conclusion beyond a reasonable doubt.

-12-
12

Although we cannot accept Singleterry's theory as

such, we do not mean to suggest that the district court has

no continuing duty to police the jury's consideration of a

confession's probative value. First, if the district court

loses confidence in its earlier determination of the

corroboration issue and the evidence is otherwise inadequate

to support a conviction, the proper course would be to enter

a judgment of acquittal. Alternatively, if the government's

remaining evidence could support a finding of guilt but the

jury's incurable exposure to the confession raises serious

questions about the prospect of a fair trial, the proper

course would be to declare a mistrial. See Stewart v. United

States, 366 U.S. 1, 10 (1961); United States v. Sepulveda, 15

F.3d 1161, 1184 (1st Cir. 1993), cert. denied, 62 U.S.L.W.

(U.S. June 20, 1994).

Second, a confession otherwise admissible under

Opper may nevertheless be inadmissible "if its probative

value is substantially outweighed by the danger of unfair

prejudice." Fed. R. Evid. 403.6

Third, particularly where a full confession

dominates the government's proof, it is fair to assume that a

jury will interpret its duty to find guilt beyond a

reasonable doubt to mean that it cannot simply accept a

6. Singleterry does not argue on appeal that the district
court should have excluded evidence of the confession, or any
portion thereof, on Rule 403 grounds.

-13-
13

confession at face value. See D'Aquino v. United States, 192

F.2d 338, 357 (9th Cir. 1951) (holding that where there is

adequate corroboration of the confession "the usual

instructions on presumption of innocence and reasonable doubt

adequately cover[] all that the jury need be told upon this

question of [corroboration]") (citing Pearlman v. United

States, 10 F.2d 460 (9th Cir. 1926)), cert. denied, 343 U.S.

935 (1952); McCormick, supra, 145, at 564 ("Nor is there

sufficient need to submit the matter to the jury, as long as

the jury is adequately sensitized to the need to find all

elements of the crimes charged beyond a reasonable doubt.").

Fourth, we note that a judge has wide latitude to

select appropriate, legally correct instructions to ensure

that the jury weighs the evidence without thoughtlessly

crediting an out-of-court confession. Cf. Miller, 987 F.2d

at 1465 (holding that district court properly instructed jury

that it could rest guilty verdict on uncorroborated yet

credible testimony of an accomplice but should "keep in mind

that such testimony is always to be received with caution and

weighed with great care"); United States v. Twomey, 884 F.2d

46, 53 (1st Cir. 1989) (suggesting that court may "assist the

jury by demonstrating to them how to go about analyzing the

evidence"), cert. denied, 496 U.S. 908 (1990); Ayling, supra,

at 1141 (arguing that "guidance on the means of determining

the ultimate credibility of the evidence accords with the

-14-
14

jury's role as finder of evidentiary sufficiency").

Accordingly, even if the district court has properly admitted

evidence of a confession, the court has the discretion to

determine that the question of trustworthiness is such a

close one that it would be appropriate to instruct the jury

to conduct its own corroboration analysis.

In this case, there is no indication that the

district court overlooked its obligation to avoid or limit

undue prejudice stemming from evidence of Singleterry's

confession. The district court had no occasion to exclude

the confession under Rule 403, correctly found that the

confession was trustworthy, and properly instructed the jury

on the government's burden of proof. Finally, in a

manifestly appropriate exercise of discretion, the court

directed the jury to "consider any . . . facts or

circumstances disclosed by the evidence . . . tending to

corroborate or to contradict the version of events which the

witnesses have told you."

In sum, there was no error in the lower court's

refusal to instruct the jury to apply the Opper

trustworthiness requirement before considering Singleterry's

confession to be probative of his guilt.

B. Constitutionality of Sentencing Distinction Between

Cocaine Base and Cocaine Powder

Singleterry maintains that his sentence on Count I

is the product of an unconstitutional distinction between

-15-
15

offenses involving cocaine base and those involving cocaine

powder. See 18 U.S.C. 841(b); U.S.S.G. 2D1.1(c)

(equating 1 gram of cocaine base with 100 grams of cocaine).

Singleterry did not contend below that the laws at issue are

facially unconstitutional. Instead, he offered evidence in

an attempt to demonstrate that the sentencing distinction

between cocaine base and cocaine is either irrational,

racially motivated, or both. On appeal, Singleterry

essentially argues that the district court erroneously

applied the relevant constitutional principles to the facts

found at the sentencing hearing. We first recite the

procedural rules that govern this portion of our analysis,

then turn to a brief discussion of the merits.

While pure questions of law are subject to de novo

review, we generally examine a district court's fact-based

determinations for clear error. Williams v. Poulos, 11 F.3d

271, 278 (1st Cir. 1993); In re Howard, 996 F.2d at 1327-28.

Thus, the district court's findings of fact are conclusive on

appeal "unless, after carefully reading the record and

according due deference to the trial court's superior ability

to judge credibility, we form `a strong, unyielding belief

that a mistake has been made.'" Williams, 11 F.3d at 278

(quoting Dedham Water Co. v. Cumberland Farms Dairy, Inc.,

972 F.2d 453, 457 (1st Cir. 1992)). The same standard of

review often applies to mixed questions of law and fact,

-16-
16

although we are less likely to defer to the district court's

conclusions where proper application of the law primarily

requires a clarification of the relevant legal principles.

Id. at 278 & n.11 (citing In re Howard, 996 F.2d at 1328).

The clear error standard does not apply, however,

when the fact-finding at issue concerns "legislative," as

opposed to "historical" facts. See generally Dunagin v. City

of Oxford, 718 F.2d 738, 748 n.8 (5th Cir. 1983) (en banc)

(plurality), cert. denied, 467 U.S. 1259 (1984); Menora v.

Illinois High Sch. Ass'n, 683 F.2d 1030, 1036 (7th Cir.

1982), cert. denied, 459 U.S. 1156 (1983); see also Lockhart

v. McCree, 476 U.S. 162, 168-69 n.3 (1986) (reserving

question while suggesting approval of plurality opinion in

Dunagin). "Legislative facts are those general

considerations that move a lawmaking or rulemaking body to

adopt a rule, as distinct from the facts which determine

whether the rule was correctly applied." Menora, 683 F.2d at

1036. Accordingly, we need not defer to the lower court's

assessment of the "evidence" Singleterry offers to

demonstrate the irrational and racially discriminatory nature

of the adoption of the distinction between cocaine base and

cocaine powder offenses.

1. Irrational Classification

It is well settled that an irrational

classification imposed by federal law is violative of the

-17-
17

equal protection component of the Fifth Amendment's Due

Process Clause. See Miranda v. Secretary of Treasury, 766

F.2d 1, 6 (1st Cir. 1985) (citing Mathews v. De Castro, 429

U.S. 181, 182 n.1 (1976)). Singleterry contends that a

distinction between cocaine base and cocaine powder is such a

classification because the use of cocaine base allegedly

presents no greater health threat than the use of cocaine

powder. Yet Singleterry presents little or no evidence to

support this contention, nor has he explained why such

evidence would be dispositive of the rationality of the

distinction at issue.

Even if there is no telling difference in the

health effects associated with the use of different types of

cocaine, it would be rational to treat cocaine base offenses

more harshly for other reasons. For example, Congress could

rationally seek to strengthen the deterrent effect of the

narcotics laws by increasing the "cost" to a criminal of

using or selling a cocaine substance that, like cocaine base,

is sold at a cheaper unit price than other cocaine

substances. Indeed, of the four citations to the

Congressional Record that Singleterry offers in his opening

brief as probative of congressional intent, each suggests

that Congress has been concerned that the low price of

cocaine base (in the absolute sense as well as relative to

cocaine) would lead to an explosion in drug use.

-18-
18

In any event, the district court correctly

concluded that "Congress had before it sufficient . . .

information to make distinctions that would justify . . .

more severe sentences for trafficking in or using cocaine

base or crack than cocaine itself." Accord United States v.

Frazier, 981 F.2d 92, 95 (3d Cir. 1992) (noting that the

Third Circuit, "along with every other federal court of

appeals to rule on the issue, has held that the distinction

between cocaine base and cocaine in the federal sentencing

scheme is constitutional under rational basis equal

protection review"), cert. denied, 113 S. Ct. 1661, 1662

(1993).

2. Racially Discriminatory Classification

Singleterry next argues that the harsher penalties

for cocaine base offenses are unconstitutional because they

have such a disproportionate effect on blacks as to give rise

to an inference that Congress and the Sentencing Commission

established those penalties for the purpose of racial

discrimination. See Yick Wo v. Hopkins, 118 U.S. 356 (1886).

As proof of disparate impact, Singleterry offers some

evidence that (1) most cocaine base users are black while

most users of cocaine are white, and (2) the vast majority of

sentences for cocaine base offenses are imposed on black

defendants while white defendants comprise the largest share

of those sentenced for cocaine offenses. In addition,

-19-
19

Singleterry has offered some evidence that Congress

anticipated such an impact because, in adopting heightened

penalties for cocaine base offenses, it was attempting to

address a problem afflicting lower-income urban communities.

We agree that where evidence of disparate impact

leads most naturally to an inference of discriminatory

purpose, the governmental classification may be subject to

strict scrutiny under equal protection principles. See

McCleskey v. Kemp, 481 U.S. 279, 293 (1987) (holding that

"`stark'" statistical pattern may serve "as the sole proof of

discriminatory intent under the Constitution") (quoting

Village of Arlington Heights v. Metropolitan Hous. Dev.

Corp., 429 U.S. 252, 266 (1977)); Washington v. Davis, 426

U.S. 229, 242 (1976) ("[D]iscriminatory impact . . . may for

all practical purposes demonstrate unconstitutionality

because in various circumstances the discrimination is very

difficult to explain on nonracial grounds."); Gomillion v.

Lightfoot, 364 U.S. 339, 341 (1960); Yick Wo, 118 U.S. at

373-74. But here, as we suggested in discussing the

rationality of the sentencing scheme, there are racially

neutral grounds for the classification that more "plausibly

explain[]" its impact on blacks. Personnel Adm'r v. Feeney,

442 U.S. 256, 275 (1979). As a result, there is insufficient

evidence "that the distinction drawn between cocaine base and

cocaine was motivated by any racial animus or discriminatory

-20-
20

intent on the part of either Congress or the Sentencing

Commission." Frazier, 981 F.2d at 95 (citing United States

v. Simmons, 964 F.2d 763 (8th Cir.), cert. denied, 113 S. Ct.

632 (1992), and United States v. Galloway, 951 F.2d 64 (5th

Cir. 1992)). But see United States v. Clary, 846 F. Supp.

768 (E.D. Mo. 1994) (holding that sentencing distinction

between cocaine base and cocaine powder violates equal

protection principles after finding circumstantial evidence

of unconscious discriminatory purpose). In short, there was

no error in the district court's determination to this

effect.

Finally, we note that while "[t]he equal protection

obligation imposed by the Due Process Clause of the Fifth

Amendment is not an obligation to provide the best governance

possible," Schweiker v. Wilson, 450 U.S. 221, 230 (1981), the

absence of a constitutional command is not an invitation to

government complacency. Although Singleterry has not

established a constitutional violation, he has raised

important questions about the efficacy and fairness of our

current sentencing policies for offenses involving cocaine

substances. We leave the resolution of these matters to the

considered judgment of those with the proper authority and

institutional capacity.

III.

CONCLUSION

-21-
21

For the foregoing reasons, we affirm Singleterry's

conviction as well as his sentence.

So ordered.

-22-
22