**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marvin BYSE, Defendant–Appellant.**

No. 93–8081.

United States Court of Appeals,
Eleventh Circuit.

Aug. 17, 1994.

**1166**

Kevin R. Brehm, Federal Defender Program, Inc., Atlanta, GA, for defendant-appellant.

Sandra Elizabeth Strippoli, Amy Levin Weil, Asst. U.S. Attys., Atlanta, GA, for plaintiff-appellee.

Before BIRCH and CARNES, Circuit Judges, and BLACKBURN *, District Judge.

BIRCH, Circuit Judge:

In this appeal, we decide for the first time in our circuit whether sentencing statutes that punish more severely conduct involving base or crack cocaine as opposed to powder cocaine exhibit an unconstitutional, racially discriminatory purpose. The district court determined that the relevant sentencing provisions do not violate equal protection. We AFFIRM.

## I. BACKGROUND

On June 1, 1992, defendant-appellant Marvin Byse was introduced to a government confidential informant by codefendant Greg Watkins. Byse and the informant discussed a crack cocaine purchase. They negotiated the purchase further in a series of recorded telephone conversations from June 3 to 11, 1992.

Although they settled on a six-ounce purchase at the price of $1,150 per ounce, Byse was able to obtain only four ounces on the day of the transaction. Byse was met by the informant and an undercover agent for the purchase. After the undercover agent examined a one-ounce sample of the crack cocaine and showed Byse the money for the purchase, Byse was arrested.

Byse and codefendant Watkins were charged in a two-count indictment with conspiracy to possess with intent to distribute base or crack cocaine in violation of 21 U.S.C. § 846, and attempt to distribute base cocaine, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. A jury was selected for Byse's trial on October 27, 1992. After the government had exercised four of its six peremptory strikes, Byse, who is black, raised a Batson[1] challenge. Two of the government's strikes were black jurors. Another was a juror whom the government and the court believed to be Indian; Byse contended that this juror was black. The government imme-

---

* Honorable Sharon Lovelace Blackburn, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

diately explained its reasons for striking the jurors and advised the court that it did not intend to exercise any of its remaining strikes on black jurors.[2]

Following the court's ruling that there was no racial motivation in the three government strikes in question, jury selection continued with no additional *Batson* challenges by the defense. Blacks served on the jury. At the conclusion of the government's case, the court granted Byse's motion for judgment of acquittal on count one. Byse was convicted on count two.

At the sentencing hearing, Byse reiterated his objection to the presentence report in which he contended that he was entitled to a two-level downward adjustment for being a minor participant. He argued that he was merely a middleman between the informant and the source of the crack cocaine. Noting that Byse negotiated and conducted the transaction, the district court determined that the downward adjustment was not warranted.

Prior to the sentencing hearing, Byse filed a motion challenging 21 U.S.C. § 841(b)(1)(A)(iii) and U.S.S.G. § 2D1.1(c) [3] on equal protection grounds. In punishing the possession and distribution of crack cocaine more severely than powder cocaine, Byse contended that these statutes disproportionately impacted on African Americans and Hispanics. Accordingly, he asserted that "a suspect classification is involved and therefore the analysis should be 'strict scrutiny' rather than 'rational basis.'" R1–49–9 n. 3. At the sentencing hearing, however, Byse was unable to distinguish his equal protection arguments from *United States v. King*, 972 F.2d 1259 (11th Cir.1992) (per curiam), in which we found U.S.S.G. § 2D1.1(c) constitutional under the rational basis test. The district court denied his motion to declare the subject statutes unconstitutional. Byse was sentenced to 121 months of incarceration, five years of supervised release, a $5,000 fine, and a $50 special assessment.

## II. DISCUSSION

■■■ Byse raises three issues on appeal. He claims that the district court erroneously found that the government had not exercised its peremptory challenges in a racially discriminatory manner, that he was not entitled to a downward adjustment for his role in the attempted cocaine sale, and that the base or crack cocaine sentencing statutes were constitutional. Only the third basis for appeal, the constitutionality of the subject sentencing statutes, warrants analysis.[4]

■■■ The district court's finding concerning the constitutionality of a sentencing statute is subject to *de novo* review. *United States v. Osburn*, 955 F.2d 1500, 1503 (11th

---

**2.** One of the black jurors struck by the government was a teacher, who had a twenty-three-year-old, student son and a daughter employed in drug counseling. At the time of his trial, Byse was weeks away from his twenty-third birthday, and he claimed to be a student. The court determined that the strike was valid and that there was no racial bias.

The government explained that it struck the second black juror because her responses to preliminary questions indicated that she was uneducated, unemployed and very inarticulate. Apparently, the juror was employed. The court, however, stated that it also had determined from the juror's responses that she would not make an effective juror and found that race was not a factor.

The third juror in question was struck by the government because she claimed to be a minister of the word of God and responded affirmatively when the panel was asked if any member held beliefs that would prohibit or make it difficult to serve on a jury in a criminal case. Although this juror, whom the government and the court thought to be Indian, later explained that she could not swear an oath but that she could make an affirmation, the court found no racial motivation in the government's striking her.

**3.** The Sentencing Guidelines treat one gram of base or crack cocaine as the equivalent of one hundred grams of powder cocaine for sentencing purposes. U.S.S.G. § 2D1.1(c) (Drug Quantity Table); *see* 21 U.S.C. § 841(b)(1) (providing certain mandatory minimum sentences using the same 100–to–1 ratio).

**4.** Since we find no evidence of a racially discriminatory motive in the government's exercise of its subject peremptory strikes, we agree with the district court's ruling on the *Batson* challenges. Because Byse received a mandatory minimum sentence, his counsel acknowledged at oral argument that the request for downward adjustment was moot or would have no practical effect. Additionally, we agree with the district court's reasoning as to Byse's participation in the attempted crack cocaine sale.

Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 223, 121 L.Ed.2d 160, *and cert. denied,* —— U.S. ——, 113 S.Ct. 290, 121 L.Ed.2d 215 (1992). At oral argument, Byse's counsel appeared to concede the constitutionality of the implicated sentencing statutes because he could not distinguish Byse's case from *King.* Because Byse argued a different constitutional violation in the district court and in his appellate brief than that presented in *King,* we address his contention that Congress and the Sentencing Commission acted with a racially discriminatory purpose in distinguishing between the sentencing penalties for base or crack cocaine and powder cocaine. *See Lopez–Nieves v. United States,* 917 F.2d 645, 647 (1st Cir.1990) (although an apparent concession of a contention was made at oral argument, the circuit court of appeals nevertheless addressed the issue).

In *King,* the defendant-appellant argued that the disparity in punishments for crimes involving crack cocaine versus powder cocaine violated equal protection because of the discriminatory impact on black persons. We used the rational basis test to analyze his Guidelines penalty for possession of crack cocaine with intent to distribute. Under that test, we determined that lawmakers had a legitimate purpose in providing harsher penalties for possession of crack cocaine because it "is more addictive, more dangerous, and can be sold in smaller quantities than powder cocaine." *King,* 972 F.2d at 1260; *see United States v. Catchings,* 922 F.2d 777, 780 n. 3 (11th Cir.) (per curiam) ("[T]he difference in penalties between crack and other forms of cocaine demonstrated that Congress considered crack to be a more powerful and dangerous drug."), *cert. denied,* 499 U.S. 980, 111 S.Ct. 1633, 113 L.Ed.2d 729 (1991). Significantly, we determined that rational basis was the appropriate test because the appellant had "not alleged a discriminatory intent on the part of Congress." *King,* 972 F.2d at 1260; *see United States v. Stevens,* 19 F.3d 93, 96 (2d Cir.1994) ("[Defendant-appellant] does not contend that either Congress or the Federal Sentencing Commission acted with discriminatory intent; accordingly, we will not subject either § 841(b)(1) or § 2D1.1(c) to heightened scrutiny."); *United States v. Watson,* 953 F.2d 895, 898 (5th Cir.) ("Even assuming ... [defendant-appellant] could prove his disparate impact theory of race-based cocaine usage, there is no reason to apply any heightened level of scrutiny to his claim because he has made no assertion of a discriminatory intent on the part of the United States Sentencing Commission in formulating the Guidelines." (footnote omitted)), *cert. denied,* —— U.S. ——, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992).

In contrast, Byse argued in the district court and in this court that the harsher punishment for crack cocaine as opposed to powder cocaine demonstrated intentional discrimination by lawmakers against minorities subjecting the statutes in question to strict scrutiny.[5] Recognizing that we have addressed "some issues" related to the constitutionality of sentencing penalties for base or crack cocaine,[6] Byse contends that "the ra-

---

**5.** In addition to his arguments before the district court, Byse argued to our court that strict scrutiny was appropriate:

> States with few minorities (and Congress) are more likely to capitalize on the "crack" problem by attacking and penalizing the minority population.... The Equal Protection Clause prohibits disparate treatment of blacks under the crack statutes because the classification of crack is *not* precisely tailored to serve a compelling governmental interest.... Therefore, this Court must examine the legitimacy of the statutory distinction between crack and cocaine powder with the most rigid scrutiny.

Appellant's Brief at 16, 17, 18 (footnote omitted).

**6.** In addition to determining that the Guidelines punishment for crack cocaine satisfies the rational basis test in *King,* we have held that the statute requiring a mandatory minimum for possession of cocaine base, 21 U.S.C. § 841(b)(1), does not violate equal protection or due process. *United States v. Solomon,* 848 F.2d 156, 157 (11th Cir. 1988) (per curiam). "Heightened scrutiny is inapplicable because the statute does not discriminate on the basis of a suspect classification or the exercise of a fundamental right." *Id.; see United States v. Holmes,* 838 F.2d 1175, 1177 (11th Cir.) (analyzing 21 U.S.C. § 841(b)(1) relative to whether it is irrational to mandate punishment on the basis of quantity without regard to quality or purity of the illegal drug, we concluded that "where a statute does not discriminate on racial grounds or against a suspect class, Congress' judgment will be sustained in the absence of persuasive evidence that Congress had no reasonable basis for drawing the lines that it did"), *cert. denied,* 486 U.S. 1058, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988).

cially discriminatory nature of the statutory and Guidelines sentencing provisions for cocaine base has not been directly addressed by previous opinions" of our court. Appellant's Brief at 23. We agree that this is a first impression issue for our circuit.

Discriminatory purpose implies that the lawmakers selected a particular course of action, "at least in part, 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979); *see Jones v. White*, 992 F.2d 1548, 1573 (11th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 448, 126 L.Ed.2d 381 (1993), *and cert. denied*, — U.S. —, 114 S.Ct. 727, 126 L.Ed.2d 691 (1994). We determine whether lawmakers were motivated by a discriminatory purpose by examining the circumstantial and direct evidence of intent. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977); *see Jones*, 992 F.2d at 1573 (to prevail, Byse's "essential burden" is to "prov[e] discriminatory purpose with a consequent discriminatory effect"). Disparate impact of a facially neutral law on racial minorities, however, is insufficient to establish an equal protection violation unless the disparity "can be traced to a discriminatory purpose." *Feeney*, 442 U.S. at 272, 99 S.Ct. at 2293.

In addressing arguments of discriminatory purpose by Congress and the Sentencing Commission in formulating extended sentences for base or crack cocaine felonies, other circuits have concluded that there was no evidence of a racially discriminatory purpose in the disparate sentences. *See, e.g., United States v. Thurmond*, 7 F.3d 947, 950–53 (10th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1311, 127 L.Ed.2d 661 (1994); *United States v. Reece*, 994 F.2d 277, 278–79 (6th Cir.1993) (per curiam); *United States v. Frazier*, 981 F.2d 92, 95 (3d Cir.1992) (per curiam), *cert. denied*, — U.S. —, 113 S.Ct. 1662, 123 L.Ed.2d 279, *and cert. denied*, — U.S. —, 113 S.Ct. 1661, 123 L.Ed.2d 281 (1993); *United States v. Willis*, 967 F.2d 1220, 1225 (8th Cir.1992); *United States v. Galloway*, 951 F.2d 64, 65–66 (5th Cir.1992) (per curiam). Instead, review of the legislative history of the Anti–Drug Abuse Act of 1986, in which Congress amended 21 U.S.C. § 841(b)(1) to provide enhanced penalties for offenses involving specific amounts of controlled substances, reveals that Congress imposed a harsher penalty for base cocaine than for powder cocaine because it "(1) has a more rapid onset of action, (2) is more potent, (3) is more highly addictive, (4) is less expensive than cocaine powder, and (5) has widespread availability." *Thurmond*, 7 F.3d at 953 (citing statements from congressional hearings); *see United States v. Buckner*, 894 F.2d 975, 978–79 & nn. 9–10 (8th Cir.1990) (quoting from congressional hearings on crack cocaine concerning its potency, addictive nature, affordability, and prevalence); *see also United States v. Angulo–Lopez*, 7 F.3d 1506, 1509 (10th Cir. 1993) (since the record does not indicate that Congress possessed discriminatory motives in creating the sentencing distinction between crack and powder cocaine, and the legislative history reveals no race-based animus, "we recognize the discrepancy was created without any racial bias"), *cert. denied*, — U.S. —, 114 S.Ct. 1563, 128 L.Ed.2d 209 (1994); *Frazier*, 981 F.2d at 95 ("[T]here is no evidence whatsoever that suggests that the distinction drawn between cocaine base and cocaine was motivated by any racial animus or discriminatory intent on the part of either Congress or the Sentencing Commission."); *Willis*, 967 F.2d at 1225 (rejecting equal protection challenge to disparity in base cocaine penalties because there is no evidence that Congress enacted or allowed them to remain in effect to further a racially discriminatory purpose); *Galloway*, 951 F.2d at 65 (finding no indicia of discriminatory intent in the legislative history of the Anti–Drug Abuse Act of 1986). Section 2D1.1 of the Sentencing Guidelines corresponds with 21 U.S.C. § 841(b)(1).[7] *Thurmond*, 7 F.3d at 951.

---

7. The Eighth Circuit recognized that the 100–to–1 ratio used by the Sentencing Commission in delineating the Guidelines sentences for crack and powder cocaine "was mandated by Congress in 21 U.S.C. § 841(b)." *Willis*, 967 F.2d at 1225; *see United States v. Evans*, 333 U.S. 483, 486, 68

██] As in *Galloway*, Byse has argued vague statistical evidence and academic commentary concerning the discriminatory *impact* of the base or crack cocaine sentencing provisions. *Galloway*, 951 F.2d at 65; *see United States v. Lattimore*, 974 F.2d 971, 974–76 (8th Cir.1992) (finding no Congressional discriminatory intent violative of equal protection, percentages at most show disparate impact), *cert. denied,* — U.S. ——, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993). "Purposeful racial discrimination invokes the strictest scrutiny of adverse differential treatment. *Absent such purpose, differential impact is subject only to the test of rationality.*"[8] *Rogers v. Lodge*, 458 U.S. 613, 617 n. 5, 102 S.Ct. 3272, 3275 n. 5, 73 L.Ed.2d 1012 (1982) (emphasis added).

██] Because Byse has failed to produce any evidence whatsoever of discriminatory purpose by Congress or the Sentencing Commission in establishing harsher sentencing penalties for base or crack cocaine than for powder cocaine,[9] his claims of disparate impact must be analyzed under rational basis review. *See United States v. Easter,* 981

F.2d 1549, 1559 (10th Cir.1992) (because defendant-appellant presented no evidence that Congress or the Sentencing Commission adopted more severe cocaine base penalties to further a racially discriminatory purpose, "the cocaine base sentencing scheme is subject only to rational basis review"), *cert. denied,* — U.S. ——, 113 S.Ct. 2448, 124 L.Ed.2d 665 (1993). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate [government] interest." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). In *King,* analyzing U.S.S.G. § 2D1.1(c), and in *United States v. Solomon,* 848 F.2d 156 (11th Cir.1988) (per curiam) and *United States v. Holmes,* 838 F.2d 1175 (11th Cir.), *cert. denied,* 486 U.S. 1058, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988), reviewing 21 U.S.C. § 841(b)(1), we determined that rational basis requirements were met because these sentencing statutes serve legitimate government interests. Accordingly, Byse's equal protection claim relating to these two sentencing statutes is meritless.[10] We fur-

S.Ct. 634, 636, 92 L.Ed. 823 (1948) (the authority to define federal crimes and to establish punishments belongs to Congress solely).

8. Discriminatory impact alone is insufficient to show discriminatory purpose unless "a clear pattern, *unexplainable on grounds other than race,* emerges from the effect of the [legislative] action." *Arlington Heights*, 429 U.S. at 266, 97 S.Ct. at 564 (emphasis added). This is not such a "rare" case from which discriminatory purpose may be inferred because the disparate impact results from reasons other than race. *Id.; see Shaw v. Reno,* — U.S. ——, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993); *Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (rare cases where racially discriminatory impact has evidenced racially discriminatory purpose). In such cases, "the statistical disparities [were found] 'to warrant and require,' a 'conclusion [that was] irresistible, tantamount for all practical purposes to a mathematical demonstration,' that the [lawmakers] acted with a discriminatory purpose." *McCleskey v. Kemp,* 481 U.S. 279, 293 n. 12, 107 S.Ct. 1756, 1767–68 n. 12, 95 L.Ed.2d 262 (1987) (citations omitted).

9. In advancing his arguments that base cocaine and powder cocaine should be sentenced similarly, Byse has noted that the three states that

comprise the Eleventh Circuit do not distinguish between base and powder cocaine for sentencing purposes. He further contends that " 'cocaine is cocaine,' " and that "[t]here is simply no meaningful distinction between crack and cocaine powder" to warrant the 100–to–1 ratio in punishment. Appellant's Brief at 19. We disagree. "[C]ocaine base is simply a different drug than cocaine powder, with a different chemical composition; as a result, Congress can justifiably provide for different penalties for each." *Thurmond,* 7 F.3d at 953 (citation omitted); *see United States v. Easter,* 981 F.2d 1549, 1558 (10th Cir.1992) (base cocaine and powder cocaine, or cocaine hydrochloride, have different chemical compositions and physical properties, including distinct melting points, solubility levels, and molecular weights), *cert. denied,* — U.S. ——, 113 S.Ct. 2448, 124 L.Ed.2d 665 (1993).

10. To the extent that Byse merely mentions that the subject statutes also violate due process, we find this constitutional contention also to be unavailing. He claims that the 100–to–1 ratio of crack cocaine penalties to powder cocaine violates both equal protection and due process because it was arbitrarily established and has a discriminatory impact. To satisfy due process requirements, the legislation must bear a "reasonable relation to a proper legislative purpose" and be "neither arbitrary nor discriminatory."

ther hold that 21 U.S.C. § 841(b)(1) and U.S.S.G. § 2D1.1(c) do not evidence discriminatory purpose in their respective enactments, and that they therefore are not amenable to strict scrutiny.

## III. CONCLUSION

On appeal, Byse has raised a *Batson* claim and sentencing issues in which he contends that he should have received a downward adjustment for his minimal role in an attempted crack cocaine sale, and that the more severe sentencing penalties for crack cocaine as opposed to powder cocaine are unconstitutional because they evidence racially discriminatory purpose. The district court found all of these claims to be invalid. For the reasons discussed herein, we AFFIRM.

*Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934).

Byse has mingled his equal protection and due process constitutional challenges, and we have encompassed any due process contentions in the context of our equal protection analysis. Moreover, in *Solomon* and *Holmes,* we determined that 21 U.S.C. § 841(b)(1) does not violate due process. Circuits that have addressed constitutional challenges concerning the disparity in sentencing penalties for base and powder cocaine on equal protection and due process grounds have found neither viable. *See, e.g., United States v. Simms,* 18 F.3d 588, 595 (8th Cir.1994); *Thurmond,* 7 F.3d at 950–53. Additionally, other circuits specifically have found that the 100–to–1

ratio of powder cocaine to crack cocaine has a rational basis and does not violate equal protection. *See Stevens,* 19 F.3d at 97 (Second Circuit); *United States v. Bynum,* 3 F.3d 769, 774 (4th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1105, 127 L.Ed.2d 416 (1994); *Reece,* 994 F.2d at 278–79 (Sixth Circuit); *United States v. Williams,* 982 F.2d 1209, 1213 (8th Cir.1992); *Frazier,* 981 F.2d at 95 (Third Circuit); *Galloway,* 951 F.2d at 65–66 (Fifth Circuit); *United States v. Lawrence,* 951 F.2d 751, 754–55 (7th Cir.1991); *United States v. Turner,* 928 F.2d 956, 960 (10th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991); *see also Lattimore,* 974 F.2d at 975 ("[N]umbers do not indicate a violation of equal protection in the federal constitutional sense.").